Slip Op. 20-26

## UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| BEBITZ FLANGES WORKS PRIVATE LIMITED,<br><br>　　　　　Plaintiff,<br><br>v.<br><br>UNITED STATES,<br><br>　　　　　Defendant,<br><br>and<br><br>COALITION OF AMERICAN FLANGE PRODUCERS,<br><br>　　　　　Defendant-Intervenor. | Before: Mark A. Barnett, Judge<br>Court No. 18-00224<br><br>**Public Version** |

## <u>OPINION AND ORDER</u>

[Sustaining the U.S. Department of Commerce's final determination in the countervailing duty investigation of stainless steel flanges from India.]

Dated: March 2, 2020

<u>Peter J. Koenig</u>, Squire Patton Boggs (US) LLP, of Washington, DC, for Plaintiff Bebitz Flanges Works Private Limited.

<u>Geoffrey M. Long</u>, Trial Attorney, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of Washington, DC, for Defendant United States.  With him on the brief were <u>Joseph H. Hunt</u>, Assistant Attorney General, <u>Jeanne E. Davidson</u>, Director, and <u>Tara K. Hogan</u>, Assistant Director.  Of counsel on the brief was <u>Vania Wang</u>, Attorney, Office of the Chief Counsel for Trade Enforcement and Compliance, U.S. Department of Commerce, of Washington, DC.

<u>Daniel B. Pickard</u>, <u>Stephanie M. Bell</u>, and <u>Cynthia C. Galvez</u>, Wiley Rein LLP, of Washington, DC, for Defendant-Intervenor Coalition of American Flange Producers.

Barnett, Judge:  This action is before the court on Plaintiff Bebitz Flanges Works
Private Limited's ("Bebitz") motion for judgment on the agency record challenging the
U.S. Department of Commerce's ("Commerce" or "the agency") final determination in
the countervailing duty ("CVD") investigation of stainless steel flanges from India.[1]  *See*
*Stainless Steel Flanges From India*, 83 Fed. Reg. 40,748 (Dep't Commerce Aug. 16,
2018) (final affirmative [CVD] determination and final affirmative determination of critical
circumstances) ("*Final Determination*"), ECF No. 20-4, and accompanying Issues and
Decision Mem., C-533-878 (Aug. 10, 2018) ("I&D Mem."), PR 315.

Bebitz challenges Commerce's failure to grant Bebitz's extension requests in full;
rejection of Bebitz's supplemental CVD questionnaire response as untimely; and use of
total adverse facts available ("AFA") to determine Bebitz's CVD rate.  *See generally*
Bebitz Opening Br. ("Bebitz's Mem."), ECF No. 29.  Defendant United States ("the
Government") and Defendant-Intervenor Coalition of American Flange Producers
("CAFP") each filed responses in support of Commerce's determination.  *See* Def.'s
Resp. to Pl.'s Mot. for J. on the Agency R. ("Gov't's Resp."), ECF No. 34; Resp. Br. of
Def.-Int. Coalition of American Flange Producers ("CAFP's Resp."), ECF No. 35.

---

[1] The administrative record for this case is divided into a Public Administrative Record
("PR"), ECF No. 20-2, and a Confidential Administrative Record ("CR"), ECF No. 20-3.
Parties submitted joint public and confidential appendices containing record documents
cited in their briefs.  *See* Public R.A. of Documents, ECF No. 38, and Am. Public R.A. of
Documents, ECF No. 45; Confidential R.A., ECF No. 44.  The court references the
confidential version of the relevant record documents, unless otherwise specified.

For the reasons discussed below, the court denies Bebitz's motion and sustains Commerce's *Final Determination*.

### JURISDICTION AND STANDARD OF REVIEW

The court has jurisdiction pursuant to section 516A(a)(2)(B)(i) of the Tariff Act of 1930, as amended, 19 U.S.C. § 1516a(a)(2)(B)(i) (2012),[2] and 28 U.S.C. § 1581(c). The court will uphold an agency determination that is supported by substantial evidence and otherwise in accordance with law.  19 U.S.C. § 1516a(b)(1)(B)(i).

### BACKGROUND

In August 2017, Commerce received a countervailing duty petition from CAFP regarding stainless steel flanges from India and, shortly thereafter, timely initiated a CVD investigation.  *See Stainless Steel Flanges from India and the People's Republic of China*, 82 Fed. Reg. 42,654, 42,655 (Dep't Commerce Sept. 11, 2017) (initiation of CVD investigations), PR 44.  The period of investigation was calendar year 2016.  *Id.*

On October 3, 2017, Commerce selected Bebitz as a mandatory respondent in the investigation.  *See* Respondent Selection Mem. (Oct. 3, 2017) at 2, 4–5, CR 23, PR

---

[2] All citations to the Tariff Act of 1930, as amended, are to Title 19 of the U.S. Code, and references to the U.S. Code are generally to the 2012 edition.  However, the Trade Preferences Extension Act ("TPEA"), Pub. L. No. 114–27, § 502, 129 Stat. 362, 383–84 (2015), made several amendments to the antidumping and countervailing duty laws. Section 502 of the TPEA amended 19 U.S.C. § 1677e.  *See* TPEA § 502.  The TPEA amendments affect all antidumping duty determinations made on or after August 6, 2015.  *See* Dates of Application of Amendments to the Antidumping and Countervailing Duty Laws Made by the Trade Preferences Extension Act of 2015, 80 Fed. Reg. 46,793 (Dep't Commerce Aug 6, 2015).  Accordingly, all references to 19 U.S.C. § 1677e are to the amended version of the statute.

83.  On October 4, 2017, Commerce issued a CVD questionnaire to Bebitz.  *See* CVD

Questionnaire (Oct. 4, 2017) ("Initial Questionnaire"), PR 84.

In section III of the questionnaire, Commerce instructed Bebitz to identify

companies with which it is affiliated pursuant to 19 U.S.C. § 1677(33) and to "describe

in detail the nature of the relationship between [Bebitz] and [its affiliates]."  *Id.* § III, p. 1.

Commerce further instructed Bebitz to provide a complete questionnaire response for

affiliates that are cross-owned and produce the subject merchandise.  *Id.* § III, p. 2.

Commerce explained that "cross-ownership exists between two or more corporations

whe[n] one corporation can use or direct the individual assets of the other corporation(s)

in essentially the same ways it can use its own assets."  *Id.* (citing 19 C.F.R.

§ 351.525(b)(6)(vi)).  Commerce advised Bebitz that it was "responsible for identifying

all cross-owned affiliates" and if Bebitz was "unclear as to which companies must be

included in [Bebitz's] response," then Bebitz "must notify [Commerce] in writing within

14 days of the date of th[e] questionnaire."  *Id.* § III, pp. 2–3.  Commerce set October

18, 2017, as the deadline for Bebitz's identification of its affiliates and November 17,

2017, as the deadline for the remainder of the questionnaire response (including the

response of any cross-owned affiliates).  *Id.* (cover page).

Bebitz timely requested an extension to October 25, 2017, to respond to the

portion of the Initial Questionnaire regarding Bebitz's affiliates.  Bebitz Ext. Request to

Answer Cross-Owned Questionnaire (Oct. 17, 2017), PR 91.  Commerce partially

granted the extension to October 23, 2017.  Affiliated Cos. Resp. Deadline Ext. (Oct. 17,

2017), PR 92.  On October 23, 2017, Bebitz submitted its response.  *See generally*

Bebitz Resp. to Sec. III Cross-Owned Questionnaire (Oct. 23, 2017) ("Bebitz's Affiliation

Resp."), CR 28, PR 95.   Therein, Bebitz asserted that it had no cross-owned affiliates.

*Id.* at 1–2.  In that same response, Bebitz acknowledged that Viraj Profiles Limited

("Viraj") was part of a "Personal Family Grouping" and a "[p]roducer of subject

merchandise."  *Id.*, Ex. 1.

On November 7, 2017, CAFP filed comments arguing that Bebitz's response was

deficient because, in relevant part, Bebitz failed to adequately explain why it did not

report Viraj as a cross-owned affiliate in light of information to the contrary.[3]  CAFP's

Affiliation Cmts. at 2–5.  CAFP suggested that Commerce "should direct Bebitz to

provide a full questionnaire response for Viraj" and additional information regarding

"each affiliated party."  *Id.* at 5.  Bebitz did not respond to CAFP's Affiliation Comments.

On November 16, 2017, Bebitz submitted its Initial Questionnaire Response that

included several exhibits but did not include a response on behalf of Viraj as a cross-

owned company.  *See generally* Ltr. To Sec'y from Bebitz (Nov. 16, 2017), ECF No. 46.

One exhibit contained Bebitz's financial statements, note 34 of which provided

"[[                                     ]]" and part A(b) therein identified "[[

                                                                         ]]."  *Id.*, Annex. 3, p.

42.  Identified on that list is [[     ]].  *Id.*

---

[3] Specifically, CAFP cited evidence of the family and business relationships between
the two companies presented in a U.S. International Trade Commission investigation,
two articles discussing the connections between Bebitz and Viraj, and Bebitz's own
reporting identifying Viraj as part of a "Personal Family Grouping" and a producer of
subject merchandise.  *See* Pet'rs' Cmts. on Bebitz's Affiliated Cos. Questionnaire Resp.
(Nov. 6, 2017) ("CAFP's Affiliation Cmts.") at 3–5, CR 32, PR 100.

Note 34, part B, further lists the value of related party transactions during the
fiscal year, indicating that Bebitz purchased [[                    ]] Indian rupees in goods and
materials from [[      ]].  *Id.*, Annex. 3, p. 43.  This value represents more than [[    ]]
percent of the total cost of materials Bebitz consumed during that year
([[                    ]] Indian rupees).  *Id.*, Annex. 3, p. 36.

Four days later, on November 20, 2017, Commerce instructed Bebitz to (1)
provide a "complete questionnaire response for Viraj" and "a detailed description of the
nature of [each affiliate's] business"; (2) "identify the owners (direct and indirect),
directors, board members, and managers for each [affiliate] and for Bebitz"; and (3)
describe in detail Bebitz's relationship with each affiliate.  *See* Suppl. Questionnaire for
Affiliation Questionnaire Resp. (Nov. 20, 2017) ("Suppl. Questionnaire") at 3, PR 133.  If
Bebitz claimed "that an [affiliate] is not cross owned," then Bebitz was to "provide a
detailed description of why such treatment is appropriate."  *Id.*  Commerce set a
deadline of November 27, 2017, for Bebitz's response.  *Id.* at 1–2.

On November 22, 2017, Bebitz submitted its first request for an extension of
time, to December 11, 2017, to respond to the Supplemental Questionnaire.  *See* Bebitz
Ext. Request to Answer Cross-Owned Questionnaire (Nov. 22, 2017), PR 135.
Commerce granted Bebitz's request, in part, extending the deadline to November 30,
2017.  First Suppl. Questionnaire of Affiliated Cos. Resp. Deadline Ext. (Nov. 22, 2017),
PR 137.  On November 26, 2017, Bebitz made a second request for an extension to
December 11, 2017.  Bebitz Ltr. to Commerce as to Bebitz Suppl. QR Ext. Request
(Nov. 26, 2017), PR 144.  Commerce granted this request, in part, further extending the

deadline to December 4, 2017.  First Suppl. Questionnaire of Affiliated Cos. Resp.

Second Deadline Ext. (Nov. 27, 2017) ("Second Ext."), PR 145.  On December 1, 2017,

Bebitz filed a third request for an extension, this time to December 19, 2017.  Bebitz Ltr.

to Commerce as to Bebitz Suppl. QR Ext. Request (Dec. 1, 2017), PR 152.  Commerce

denied Bebitz's third extension request.  First Suppl. Questionnaire of Affiliated Cos.

Resp. Third Deadline Ext. Req. (Dec. 1, 2017), PR 153.

On December 4, 2017, at 4:40 p.m. (20 minutes before the 5:00 p.m. deadline),

Bebitz filed a fourth extension request, asking that the deadline be extended until the

next day, December 5, 2017.  Bebitz Ltr. to Commerce as to Bebitz Suppl. Q/R Ext.

Request (Dec. 4, 2017), PR 155.  That next day, on December 5, 2017, beginning at

10:24 a.m., Bebitz submitted its response to the Supplemental Questionnaire.

Rejection of Suppl. Resp. (Dec. 6, 2017) ("Suppl. Questionnaire Resp. Determination")

at 1, PR 157.

Commerce rejected Bebitz's December 5, 2017, submission, explaining that

Commerce did not respond to Bebitz's fourth extension request because it "was filed

shortly before the deadline" and Commerce "did not have sufficient time to consider the

request."  *Id*.  Commerce further explained that because Bebitz filed its extension

request without allowing sufficient time for the agency to respond before the deadline,

Bebitz's submission was due by 8:30 a.m. on December 5, 2017, and Bebitz failed to

meet that deadline.  *Id.* at 1–2.  Thus, pursuant to sections 351.302 and 351.104 of

Commerce's regulations, the agency rejected Bebitz's submission as untimely and did

not retain a copy in the record.[4]  *Id.* at 2.

On December 7, 2017, Bebitz requested that Commerce reconsider its rejection

of the submission.  First Recons. Req.  On December 12, 2017, Commerce rejected

Bebitz's request and its assertion that the agency had not afforded Bebitz sufficient time

to provide the requested information.  *See* Resp. to First Recons. Req. at 2.  Commerce

noted that Bebitz had 42 days to respond to the Initial Questionnaire (37 days plus a

five-day extension) and 14 additional days to answer the Supplemental Questionnaire.

*Id*.  Commerce explained that Bebitz was "fully aware of the consequences of untimely

submissions."  *Id*.  Finally, Commerce noted that although Bebitz requested that

Commerce accept its untimely submission, Bebitz had not demonstrated that it met the

"extraordinary circumstances" standard for an untimely extension as provided in 19

C.F.R. § 351.302(c).  *Id*. at 3.

Just over a month later, on January 16, 2018, Commerce issued its preliminary

determination.  *See generally Stainless Steel Flanges From India*, 83 Fed. Reg. 3,118

---

[4] Commerce also stated that it rejected the submission as incomplete because the submission referenced 29 exhibits, "none of which were included in the filing."  Suppl. Questionnaire Resp. Determination at 2.  Bebitz argued that it had submitted all 29 exhibits.  *See* Bebitz Ltr. to Commerce as to Bebitz Resp. to Rejection Ltr. (Dec. 7, 2017) ("First Recons. Req.") ¶ 7, PR 161.  Commerce also said that Bebitz failed to submit a public version of its submission.  *See* Resp. to Recons. Req. (Dec. 12, 2017) ("Resp. to First Recons. Req.") at 2, PR 166.  Bebitz claimed that, pursuant to the "one-day lag rule," Commerce had already rejected the submission before the public version was due.  Bebitz Reply to Petitioner and Commerce Ltrs. (Jan. 8, 2018) at 2, PR 210 (citing 19 C.F.R. § 351.303(c)).  Commerce did not rely on missing exhibits or the lack of a public version in the Issues and Decision Memorandum, *see* I&D Mem. at 12–15, and the parties have not raised these issues before the court.

(Dep't Commerce Jan. 23, 2018) (prelim. affirmative CVD determination, prelim.

affirmative and alignment of final determination with final antidumping duty

determination) ("*Prelim. Determination*"), PR 236; Decision Mem. for the Prelim.

Determination in the CVD Investigation for Stainless Steel Flanges from India (Jan. 16,

2018) ("Prelim. Decision Mem."), PR 228.  Therein, Commerce preliminarily found that it

did not have a "complete and accurate depiction of the company's corporate structure"

and Bebitz did not identify "which companies it is providing responses for in its

response."  Prelim. Decision Mem. at 5.  Commerce also preliminarily found that Viraj

was cross-owned with Bebitz and Viraj is a producer of subject merchandise "that

exercises significant influence over Bebitz."  *Id.* at 8.  Pointing to its rejection of Bebitz's

late submission and its denial of Bebitz's request for reconsideration, Commerce found

that necessary information was not on the record and Bebitz had withheld requested

information.  *Id.* at 12–13.  Commerce further found that Bebitz failed to cooperate to

the best of its ability such that an adverse inference was warranted.  *Id.*  Based on these

preliminary findings, Commerce assigned Bebitz a preliminary CVD rate of 239.61

percent using adverse facts available.  *Prelim. Determination*, 83 Fed. Reg. at 3,119.

Interested parties filed comments with Commerce regarding the preliminary

determination.  *See generally* CAFP's Rebuttal Br. (July 9, 2018), CR 146, PR 300;

Bebitz's Case Br. (July 2, 2018) ("Bebitz's Case Br."), PR 295.  Bebitz argued that

Commerce erred in denying its extension request and using AFA to determine its

preliminary CVD rate.  Bebitz's Case Br. at 1–7.

In its *Final Determination*, Commerce confirmed its preliminary decision to use AFA to determine Bebitz's CVD rate.  I&D Mem. at 14.  Commerce again found "that Viraj is a subject merchandise producer[] that is cross-owned with Bebitz since Viraj exercises significant influence over Bebitz."  *Id.* at 12 (internal quotation marks omitted) (citing Prelim. Decision Mem. at 8).  Because Bebitz did not respond timely to the Supplemental Questionnaire, Commerce found that the record lacked accurate and reliable information regarding Bebitz's affiliates and, thus, Commerce applied facts available to determine "which other potential cross-owned companies, if any, should have been reported" and "which subsidy programs were utilized."  *Id.* at 13.  Commerce found that an adverse inference was warranted because "Bebitz failed to cooperate by not acting to the best of its ability to comply with [the agency's] requests for necessary information."  *Id.* at 15.  As a result, Commerce inferred (1) that Bebitz and Viraj benefited from the programs subject to Commerce's investigation "with the exception of certain newly alleged subsidies programs for which Bebitz and Viraj provided timely and complete responses," *id.* at 14; and (2) that the benefit to Bebitz from the income tax reduction programs was the difference between no income tax and the standard income tax rate for corporations, *i.e.*, 30 percent for the combined income tax programs, *id.* at 4; *see also* Prelim. Decision Mem. at 15.[5]  As a result of adjustments made from the *Preliminary Determination*, Commerce assigned a final CVD rate to Bebitz of 256.16

---

[5] Commerce incorporated its AFA findings from the Preliminary Decision Memorandum into the final Issues and Decision Memorandum.  *See* I&D Mem. at 4.

percent, based on AFA.[6]  *See Final Determination*, 83 Fed. Reg. at 40,749; I&D Mem. at 5, 34.

**DISCUSSION**

## I. Commerce's Denial of an Extension of Time

### A. Legal Framework

As relevant to this case, Commerce's regulations provide that if a party requests an extension of time before the pertinent deadline expires, the agency may extend that deadline unless expressly precluded by statute upon a showing of "good cause."  19 C.F.R. § 351.302(b).  If a party files an extension request after the expiration of the deadline, the request "will not be considered unless the party demonstrates that an extraordinary circumstance exists."  *Id*. § 351.302(c).  If a party fails to comply with the time limits set by Commerce, then the agency "will not consider or retain in the official record of the proceeding" the untimely submitted material.  *Id*. § 351.302(d).  When a party submits an extension request without allowing sufficient time for Commerce to respond before the deadline, the submission must be filed by 8:30 a.m. the following work day.  *Extension of Time Limits*, 78 Fed. Reg. 57,790, 57,792 (Dep't Commerce Sept. 20, 2013) (final rule).

"[A]bsent constitutional constraints or extremely compelling circumstances," the court "will defer to the judgment of [the] agency regarding the development of the agency record."  *Dongtai Peak Honey Indus. v. United States*, 777 F.3d 1343, 1351

---

[6] Bebitz is not challenging the AFA rate itself or the manner in which Commerce determined that rate (other than the reliance on an adverse inference).

(Fed. Cir. 2015) (citations omitted).  Additionally, "[i]n order for Commerce to fulfill its

mandate to administer" the CVD law, "it must be permitted to enforce the time frame

provided in its regulations."  *Id.* (quoting *Yantai Timken Co. v. United States*, 31 CIT

1741, 1754, 521 F. Supp. 2d 1356, 1371 (2007), *aff'd*, 300 F. App'x 934 (Fed. Cir.

2008)).

### B. Parties' Contentions

Bebitz contends that Commerce abused its discretion by failing to accept the

company's late filing or grant its extension requests in full.  *See* Bebitz's Mem. at 5–8.

Bebitz submits that "[t]he obligation and clock for Bebitz to answer as to Viraj did not

begin [to run] until Commerce specifically asked Viraj in particular to answer" and the

standard for cross-ownership or control as provided in the Initial Questionnaire is

ambiguous.  *Id.* at 6–7; *see also* Pl. Bebitz Reply Br. ("Bebitz's Reply") at 6, ECF No.

37.[7]  Bebitz also contends that Commerce should have accepted its submission

because the need for an accurate CVD rate outweighs the need to strictly adhere to the

statutory deadlines for the investigation.  Bebitz's Mem. at 7–8; *see also* Bebitz's Reply

at 4 (claiming that Commerce's purported delay in issuing the Supplemental

Questionnaire indicates that "Commerce was not concerned about statutory deadlines").

The Government responds that Bebitz had sufficient time to provide the

requested information.  Gov't's Resp. at 11–12; *see also* CAFP's Resp. at 13–19.  The

Government submits that Commerce must be allowed to enforce its deadlines and

---

[7] Bebitz's Reply is not paginated and, thus, the page numbers with respect to Bebitz's
Reply refer to the ECF page numbers.

determinations with respect to extension requests.  Gov't's Resp. at 12; *see also*

CAFP's Resp. at 8 ("Commerce is under no obligation to permit companies to provide

questionnaire responses on a timeline of their own choosing.").  The Government

contends that Bebitz was made aware of its obligation to provide information regarding

Viraj in the Initial Questionnaire, which unambiguously states that Bebitz "is responsible

for identifying all cross-owned affiliates."  Gov't's Resp. at 10–11 (quoting Initial

Questionnaire § III, pp. 2–3); *see also* CAFP's Resp. at 11–13.

### C. Substantial Evidence Supports Commerce's Rejection of Bebitz's Untimely Submission

Bebitz contends that in rejecting its untimely submission, Commerce abused its

discretion by prioritizing the need for finality over the agency's obligation to determine

the most accurate CVD margin.  Bebitz's Mem. at 8 (citing *Wuhu Fenglian Co. v. United

States*, 36 CIT 642, 648, F. Supp. 2d 1398, 1403 (2012)).  The record indicates

otherwise.  Commerce granted Bebitz multiple extensions, I&D Mem. at 12–13, and had

advised Bebitz of the potential consequences of failing to meet the agency's deadlines,

Initial Questionnaire § I, p. 9.

Bebitz failed to timely comply with Commerce's instructions, which resulted in

Commerce rejecting the untimely submission.  *See* I&D Mem. at 12–13.  Furthermore,

the court is not persuaded that Commerce was required to accept Bebitz's untimely

filing on the basis that the agency did not issue its *Preliminary Determination* until

January 16, 2018.[8]  *See* Bebitz's Mem. at 8.  It is not for Bebitz "to establish

Commerce's deadlines or dictate to Commerce whether and when Commerce actually

needs the requested information."[9]  *Dongtai Peak Honey*, 777 F.3d at 1352.

Bebitz's broader claim that it was not afforded a reasonable opportunity to

provide the requested information is similarly unpersuasive.  *See* Bebitz's Mem. at 5–6.

Again, when Commerce issued the Initial Questionnaire, Commerce requested

information concerning and from cross-owned affiliates.  Initial Questionnaire § III, p. 2.

Bebitz provided certain information about its relationship with Viraj but took the position

that the companies were not cross-owned and did not, then, respond to Commerce's

questions with respect to Viraj.  *See* I&D Mem. at 13–14.  Commerce provided Bebitz a

second opportunity to provide relevant information with respect to Viraj; however, as

---

[8] Bebitz incorrectly indicates that the *Preliminary Determination* was issued on "January 23, 2019."  Bebitz's Mem. at 8.

[9] The court rejects Bebitz's contention that Commerce's Antidumping Manual demonstrates that Commerce acted unreasonably in requiring Bebitz to respond to the Supplemental Questionnaire in 14 days.  *See* Bebitz's Mem. at 6 (citing Antidumping Manual, U.S. Dep't of Commerce, Int'l Trade Admin. ("Antidumping Manual") (2015), *available at* https://web.archive.org/web/20180417165209/https://enforcement.trade. gov/admanual/index.html (last visited Feb. 26, 2020)).  The passage Bebitz cites refers to Commerce's guidelines concerning <u>issuing</u> supplemental questionnaires in <u>antidumping</u> cases, Antidumping Manual at ch. 4, p. 17; it does not speak to the amount of time Commerce affords a respondent to <u>respond</u> to a supplemental questionnaire in a <u>CVD</u> investigation.  Bebitz fails to take into account, among other things, that CVD investigations are governed by distinct statutory deadlines which are generally shorter than the deadlines governing antidumping investigations.

discussed, Bebitz did not provide a timely response even after receiving multiple

extensions.[10]  *See id*. at 12–13.

Bebitz's argument that Commerce should have granted its extension requests in

full lacks merit.  *See* Bebitz's Mem. at 7.  Commerce's regulation, 19 C.F.R.

§ 351.302(b) and (c), provides the agency with substantial discretion whether to grant or

deny an extension request and, particularly in light of the multiple extensions Commerce

did provide, Bebitz fails to establish that Commerce abused its discretion or otherwise

acted unlawfully in denying Bebitz's requests for additional extensions.[11]  *See Yantai*

*Timken*, 31 CIT at 1754–55, 521 F. Supp. 2d at 1371–72.

---

[10] Even if the court construed Bebitz's argument as asserting that "good cause" or "extraordinary circumstances" merited granting an extension of time, Bebitz has not identified an error in Commerce's consideration of these issues.

[11] In rejecting Bebitz's December 5, 2017 submission, Commerce attached a November 24, 2014 memorandum from an unrelated antidumping duty administrative review, memorializing a meeting between Commerce officials and Mr. Koenig of Squire Patton Boggs (US) LLP, counsel to Bebitz in this investigation.  Suppl. Questionnaire Resp. Determination at Attach. II (Mem. Re. Antidumping Duty Admin. Review of Solid Urea from the Russian Federation: Ex Parte Meeting with Rep. from Squire Patton Boggs LLP, Counsel to Respondent MCC EuroChem ("*Russia Urea* Mem.")).  The meeting was to discuss counsel's "history of late filings . . . and stress the need to adhere strictly to submission deadlines" and the action "a party must take when it is unable to comply with the electronic filing requirement."  *Russia Urea* Mem. at 1.  Commerce advised Mr. Koenig that, "from this point forward, all late submissions by Squire Patton in this or any other proceeding before the [agency] would be rejected" unless counsel complied with Commerce's procedures for requesting extensions.  *Id.* at 2.  While Commerce referred to this memorandum and counsel's history of late filings in the memorandum rejecting Bebitz's untimely submission, Commerce's rejection was reasonably based on the facts in this investigation, including Bebitz's failure to meet the extended deadline.  Suppl. Questionnaire Resp. Determination at 2.  Nevertheless, the court would encourage Commerce to maintain a clear distinction between its efforts to address a respondent's failure to cooperate in a proceeding and its efforts to discipline counsel for their actions distinct from the actions of their clients.

Bebitz asserts that it was not responsible for reporting information from Viraj in response to the Initial Questionnaire because the questionnaire did not "explicitly" request that information.  Bebitz's Mem. at 6–7; Bebitz's Reply at 6.  The purpose of the questionnaire is to allow Commerce to gather information from the respondent. Commerce does this by asking questions and providing the criteria for responding. Commerce provided criteria for identifying affiliated and cross-owned companies and required Bebitz to identify those companies that met the criteria.  Initial Questionnaire § III, p. 2.  Commerce also instructed Bebitz to request further guidance if it was unclear as to which companies to include.  *Id.* § III, pp. 2–3.  As the party in possession of the necessary information, the burden is on Bebitz to develop the record, not Commerce. *See, e.g.*, *NTN Bearing Corp. of Am. v. United States*, 997 F.2d 1453, 1458 (Fed. Cir. 1993) (citing *Zenith Elecs. Corp. v. United States*, 988 F.2d 1573, 1583 (Fed. Cir. 1993)).  "Intentional obtuseness on the part of [a] respondent does not obviate Commerce's" clear request "for the relevant information."  *See Hyundai Heavy Indus., Co. v. United States*, 42 CIT ___, ___, 332 F. Supp. 3d 1331, 1341–42 (2018).

Bebitz seeks to rely on *Ta Chen Stainless Steel Pipe v. United States*, 23 CIT 804 (1999), and *Böwe-Passat v. United States*, 17 CIT 335 (1993), in support of its claim that it lacked notice regarding the need to provide information concerning Viraj until Commerce issued the Supplemental Questionnaire.  *See* Bebitz's Mem. at 6–7. However, in *Ta Chen*, the court found that Commerce had told the respondent that it had not determined how to classify the sales at issue and, thus, had not confirmed the need for the information in question.  23 CIT at 818–19.  Similarly, in *Böwe-Passat*,

Commerce's supplemental request for information appeared to the court to focus on

information distinct from that which Commerce later found to be deficient.  17 CIT at

340.  Neither case supports Bebitz's position here.  Moreover, to the extent that Bebitz

intended to suggest that Commerce failed to provide Bebitz an opportunity to remedy a

deficient response, as provided in 19 U.S.C. § 1677m(d), Commerce's Supplemental

Questionnaire satisfied that requirement.

For these reasons, substantial evidence supports Commerce's decision to reject

Bebitz's untimely submission.

## II. Commerce's Use of an Adverse Inference

### A. Legal Framework

When necessary information is not available on the record, or an interested party

withholds information requested by Commerce, fails to provide requested information by

the submission deadlines, significantly impedes a proceeding, or provides information

that cannot be verified pursuant to 19 U.S.C. § 1677m(i), Commerce "shall . . . use the

facts otherwise available."  19 U.S.C. § 1677e(a).  Commerce's authority to use the

facts otherwise available is subject to 19 U.S.C. § 1677m(d).  *Id*.  Pursuant to

section 1677m(d), if Commerce determines that a respondent has not complied with a

request for information, it must promptly inform that respondent of the nature of the

deficiency and, to the extent practicable in light of statutory deadlines, provide "an

opportunity to remedy or explain the deficiency."

If Commerce determines that the party "has failed to cooperate by not acting to

the best of its ability to comply with a request for information," Commerce "may use an

inference that is adverse to the interests of that party in selecting from among the facts

otherwise available."  *Id.* § 1677e(b).  "Compliance with the 'best of its ability' standard

is determined by assessing whether a respondent has put forth its maximum effort to

provide Commerce with full and complete answers to all inquiries in an investigation."

*Nippon Steel Corp. v. United States*, 337 F.3d 1373, 1382 (Fed. Cir. 2003).  Commerce

uses total adverse facts available when "none of the reported data is reliable or usable,"

such as when all of the "submitted data exhibit pervasive and persistent deficiencies

that cut across all aspects of the data."  *Zhejiang DunAn Hetian Metal Co. v. United*

*States*, 652 F.3d 1333, 1348 (Fed. Cir. 2011) (citing *Steel Auth. of India, Ltd. v. United*

*States*, 25 CIT 482, 487, 149 F. Supp. 2d 921, 928–29 (2001)).

### B. Parties' Contentions

Bebitz argues that Commerce's use of AFA was not warranted because (1)

Commerce may not draw an adverse inference merely from a failure to respond to a

questionnaire; and (2) Commerce set "an impossible deadline" for responses to the

Supplemental Questionnaire.[12]  Bebitz's Mem. at 8–9; Bebitz's Reply at 7–9.  The

Government contends that Bebitz was afforded multiple opportunities to comply with

Commerce's information requests but failed to provide timely responses, warranting a

finding that it did not comply to the best of its ability.  *See* Gov'ts Resp. at 15–16; *see*

*also* CAFP's Resp. at 19–20.

---

[12] Bebitz does not contest that if Commerce properly rejected Bebitz's untimely submission then Commerce properly resorted to facts available.  *See* Bebitz's Mem. at 8–9; *see generally* 19 U.S.C. § 1677e(a).  Bebitz only contests whether Commerce was permitted to draw an adverse inference.  *See* Bebitz's Mem. at 8–9.

### C. Commerce's Use of an Adverse Inference is Supported by Substantial Evidence and In Accordance with Law

Substantial evidence supports Commerce's finding that Bebitz did not act to the best of its ability to comply with the agency's information requests and that finding is otherwise in accordance with law. [13]

In response to the Initial Questionnaire, Bebitz reported that none of its affiliates were cross-owned.  *See* Bebitz's Affiliation Resp.  Bebitz then failed to provide a timely response to Commerce's Supplemental Questionnaire despite receiving multiple extensions.  *See* I&D Mem. at 12–13, 14–15 (describing the extensions); Suppl. Questionnaire Resp. Determination.

"To avoid the risk of an adverse inference, respondents must take reasonable steps . . . and put forth maximum effort to investigate and obtain all requested information."  *Mukand, Ltd. v. United States*, 767 F.3d 1300, 1306 (Fed. Cir. 2014). Bebitz's failure to do so in this case supports Commerce's conclusion that Bebitz failed to cooperate to the best of its ability.  *Id.*; *see also Essar Steel Ltd. v. United States*, 678 F.3d 1268, 1275–76 (Fed. Cir. 2012) (finding that Commerce appropriately relied on AFA because the respondent withheld key documents and provided contradictory information).

---

[13] While Bebitz asserts that the record lacks substantial evidence that it is cross-owned with Viraj, *see* Bebitz's Mem. at 6, any gap in the evidentiary record is a result of Bebitz failing to provide a timely response to Commerce's Supplemental Questionnaire. Nevertheless, record evidence does support Commerce's conclusion that Viraj is a producer of subject merchandise and exercises significant influence over Bebitz such that Bebitz and Viraj are cross-owned.  *See* Prelim. Decision Mem. at 8 & nn.38–40 (citations omitted).

Commerce explained that the information at issue was key to its investigation and Commerce could not accurately calculate Bebitz's CVD rate without it.  *See* I&D Mem. at 15.  Commerce explained that Bebitz's failure to provide this information warranted an adverse inference.  *Id*. at 14.  The court finds no error in this finding.  *See Essar Steel*, 678 F.3d at 1276 ("[F]ailing to produce key documents unequivocally demonstrate that Essar did not put forth its maximum effort.").

Bebitz's argument that an adverse inference was not warranted because Commerce set "an impossible deadline" for responding to the Supplemental Questionnaire is unavailing.  *See* Bebitz's Mem. at 9.  Bebitz's failure to adequately respond to the Initial Questionnaire prompted Commerce to issue the Supplemental Questionnaire; thus, the resulting deadline owes to Bebitz's failure to be more forthcoming in its initial response.  *See* I&D Mem. at 12–13.  Indeed, counting from Commerce's initial request for information, Bebitz had a total of 61 days until its response to the Supplemental Questionnaire was due.[14]  *See* I&D Mem. at 13 ("Commerce gave Bebitz multiple opportunities and has provided Bebitz two months to provide the responses.")

Even if Bebitz's untimely submission was otherwise responsive, the fact that Bebitz put forth *some* effort is not inconsistent with Commerce's conclusion that Bebitz failed to act "to the *best* of its ability."  *See* I&D Mem. at 14 (emphasis added); *Nippon*

---

[14] Commerce issued the Initial Questionnaire on October 4, 2017, *see generally* Initial Questionnaire, and the extended deadline for responding to the Supplemental Questionnaire was December 4, 2017, *see generally* Second Ext.

*Steel*, 337 F.3d at 1383 (finding that an adverse inference is appropriate when "it is reasonable for Commerce to expect that a more forthcoming response should have been given").  The purpose of the adverse inference provision is to provide an incentive for respondents to cooperate with Commerce's investigations and ensure that a party does not obtain a more favorable result by failing to cooperate than if it had cooperated fully.  *See* Uruguay Round Agreements Act, Statement of Administrative Action ("SAA"),[15] H.R. Doc. No. 103–316, vol. 1, at 870 (1994), *reprinted in* 1994 U.S.C.C.A.N. 4040, 4199; *Fine Furniture (Shanghai) Ltd. v. United States*, 748 F.3d 1365, 1373 (Fed. Cir. 2014).  Commerce's application of an adverse inference in this case is consistent with that purpose because it ensures that Bebitz does not obtain a more favorable rate by failing to disclose the full extent of its relationship with Viraj.

For these reasons, the court finds that Commerce's reliance on total AFA is supported by substantial evidence and otherwise in accordance with law.

## CONCLUSION AND ORDER

In accordance with the foregoing, it is hereby

**ORDERED** that Commerce's *Final Determination* is sustained.  Judgment will enter accordingly.

/s/      Mark A. Barnett
Mark A. Barnett, Judge

Dated: March 2, 2020
       New York, New York

---

[15] The SAA "shall be regarded as an authoritative expression by the United States concerning the interpretation and application of the Uruguay Round Agreements Act." 19 U.S.C. §3512(d).